UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDEN D. BOWMAN, | ) | Case No.: 1:06 CV 1323 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Pending before the court is Defendants United States of America, *et al.* (collectively, "Defendants") Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12.)  For the foregoing reasons, the Fed. R. Civ. P. 12(b)(1) motion to dismiss is denied, and the Fed. R. Civ. P. 12(b)(6) motion is granted.

## I.  FACTS AND PROCEDURAL HISTORY

On October 23, 1992, Congress passed Pub. L. 102-484, codified in 10 U.S.C. § 1143a, directing the Secretary of Defense to "implement a program to encourage members and former members of the armed forces to enter into public and community service jobs after discharge or release from active duty."  10 U.S.C. § 1143a(a).  Pursuant to this authority, the Secretary of Defense promulgated 32 C.F.R. §§ 77.1-.6, the Program to Encourage Public and Community Service ("Program").  Section 77.4(b)(2) permits qualified former military personnel to accrue

additional service credit for retirement through employment with "public or community service organization[s] that provide the services listed in sections 77.3(d)(1) through (d)(12)."[1]  The Program, however, excludes "organizations engaged in religious activities, unless such activities are unrelated to religious instructions, worship services, or any form of proselytization."  32 C.F.R. § 77.3(a).  It also excludes "businesses organized for profit, labor unions, [and] partisan political organizations."  *Id.*

Plaintiff served in the United States Air Force from September, 1977, until he retired in January, 1996.  (Am. Compl. ¶ 18, 20, ECF No. 21.) Plaintiff maintains that he retired with approximately seventeen years and three months of service.  (*Id.* ¶ 20.) Plaintiff further states that

---

[1]      32 C.F.R.§ 77.3(d), (e) defines a "public and community service organization" as follows:

Government or private organizations that provide or coordinate the provision of the following services:

(1) Elementary, secondary, or post secondary school teaching or administration.
(2) Support of teachers or school administrators.
(3) Law enforcement.
(4) Public health care.
(5) Social services.
(6) Public safety.
(7) Emergency relief.
(8) Public housing.
(9) Conservation.
(10) Environment.
(11) Job training.
(12) Other public and community service not listed previously, but consistent with or related to services described in paragraphs (d)(1) through (11) of this section.

(e) Public service employment. Work in a Federal, state or local government organization which provides or coordinates services listed in paragraphs (d)(1) through (12) of this section.

he began employment with the People's Church of the C & MA ("Church") in Geneva, Ohio in January, 1996, as a lay intern and later as a youth minister and that he was continuously employed with the Church until February, 2001.  (*Id*. ¶ 21-22.)

Plaintiff filed this lawsuit on May 30, 2006.  (Comp., ECF No. 1.)  In his Amended Complaint,[2] Plaintiff alleges that he filed for military service credit under the Program "late in the year 1998," again in November 2002, and once more in October, 2004, by submitting a Validation of Public or Community Service Employment Form ("Validation Form") to the Defense Manpower Data Center ("DMDC").  (Am. Comp. ¶¶ 24-26.)

Plaintiff alleges that "the reason his request for creditable service under the [Program] has not been granted and/or processed is because the form shows on its face that the Plaintiff's employment was with a religious organization and so the employment does not qualify under [32 C.F.R. § 77.3(a)]."  (Am. Comp. ¶ 27.)  Plaintiff also cursorily alleges that he "engaged in public

---

[2]

    On December 27, 2007, Plaintiff filed a Motion to Amend the Complaint (ECF No. 15), together with a proposed First Amended Complaint.  (ECF No. 15-1.)  In Plaintiff's Motion to Amend, he sought to add the following paragraph:

> Late in the year 1998, the Plaintiff prepared and submitted to the Director, Defense Manpower Data Center . . . , in Fort Ord, California a Validation of Public or Community Service Employment form requesting his employment with the People's C & MA Church starting January 1, 1996, be credited toward his years of service with the military under the Community Service Program. The Plaintiff never received any response to this 1998 application for service credits under the Community Service Program.

    (Mot. to Amend at 1.)  The court granted Plaintiff's Motion to Amend on July 20, 2007.  (*See* Order, ECF No. 20.)  Plaintiff filed the Amended Complaint on July 2, 2007.  (Am. Comp., ECF No. 21).

and community service of the kind described in 10 U.S.C. § 1143a(g) and 32 C.F.R. §  77.3(d)." (Am. Compl. ¶ 23.)  Plaintiff, however, acknowledges that "because of the provisions of 32 C.F.R. § 77.3(a) providing that nonprofit organizations 'engaged in religious activities' may not be considered a qualifying organization under the [Program], any application ... for creditable service based upon his employment by [the Church] between from [sic] January 1, 1996 and February 28, 2001 would be denied because the activities of the church were related to religious instruction and worship services."  (Am. Comp. ¶¶ 28.)

Plaintiff states that the exclusion contained in 32 C.F.R. § 77.3(a) "is not authorized by 10 U.S.C. § 1143a(g) and is contrary to the purpose and intent of Congress." (*Id*. ¶ 33.)  Additionally, Plaintiff alleges that the regulation's provision barring an early retiree from earning credit toward military service if he works for a religious organization and performs activities related to religious instructions, worship services, or proselytization is unconstitutional on its face and as applied to Plaintiff.  (*Id*. ¶ 31-32.)

Plaintiff asks that the court declare that the exclusion contained in 32 C.F.R. § 77.3(a) is unconstitutional on its face and as applied to Plaintiff.  (*Id*. at 9.)  Plaintiff also asks that Defendants be permanently enjoined from enforcing or applying the exclusion contained in 32 C.F.R. § 77.3(a).  (*Id*. at 9.)  Finally, Plaintiff asks the court to issue a mandatory injunction directing Defendants to amend Plaintiff's records to indicate he performed public and community service creditable toward his military retirement pension and benefits, based on twenty years of service  (*Id*. at 9.)

On November 21, 2006, Defendants filed the pending Motion to Dismiss.  (ECF No. 12.). In its Motion, Defendants argue: (1) this court lacks subject matter jurisdiction because Plaintiff lacks Article III and prudential standing; (2) this court lacks subject matter jurisdiction because

-4-

Plaintiff's as-applied and facial Equal Protection challenges to 32 C.F.R. § 77.3(a) are barred by the statute of limitations; and (3) Plaintiff fails to state a claim upon which relief can be granted because the regulation would violate the Establishment Clause if it did not contain language excluding an early military retiree from earning retirement credit if he works for a religious organization *and* performs activities related to religious instructions, worship services, or any form of proselytization. (Mot. to Dismiss at  7, 8, 11.).

Plaintiff filed an Opposition to Defendants' Motion to Dismiss on December 26, 2006. (Pl.'s Mot. Opp'n, ECF No. 14.). In his Opposition, Plaintiff argues: (1) he has Article III and prudential standing because he timely submitted his application for benefits; (2) his claim is not barred by the statute of limitations because his cause of action never accrued as there was never a final agency action rendered on his application; and (3) the regulation would not violate the Establishment Clause if it allowed an early retiree to earn military retirement credit for working at a religious organization *and* performing religious activities related to religious instructions, worship services, and proselytization.  (*Id.* at 4-9.)

## II. STANDARD FOR DISMISSAL

A defendant may challenge the court's subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The plaintiff has the burden of proving the court's subject matter jurisdiction.  *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986).  In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson* 355 U.S. 41, 45-46 (1957).  Furthermore, a "Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without

-5-

subject  matter jurisdiction to hear the claim." *Nawar Omeiri v. Dist. Dir.*, *Bureau of Citizenship and Immigration*, No. 07-11757, 2007 U.S. Dist. LEXIS 53235, at *3 (E.D. Mich. July 24, 2007) (citing *Hishon*, 467 U.S. at 73).

Under Fed. R. Civ. P. 12(b)(6), the court examines the legal sufficiency of a plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  Courts reviewing a 12(b)(6) motion must accept the well-pled factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff.  *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).   The court, however, need not accept "conclusions of law or unwarranted inferences cast in the form of factual allegations." *Czupih v. Card Pak, Inc.*, 916 F. Supp. 687, 689 (N.D. Ohio 1996).  Ultimately, a complaint may be dismissed only if "the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### III. LAW AND ANALYSIS

### A.  Standing.

In its Motion to Dismiss, Defendants argue that this court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff does not have standing to bring this action (Defs.' Mot. to Dismiss at 7.)  In order to establish standing, a plaintiff must satisfy both Article III of the U.S. Constitution and prudential standing requirements.

### 1.  Article III Standing.

Standing under Article III requires a plaintiff to demonstrate: "(1) an injury in fact that is actual or threatened; (2) a causal connection between the defendants' conduct and the alleged injury; and (3) a substantial likelihood that the injury will be redressed by a favorable decision." *Huish*

*Detergents Inc. v. Warren County Ky.*, 214 F.3d 707, 710 (6th Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In his Amended Complaint Plaintiff alleges:

> [b]ut for the provision of 32 C.F.R. § 77.3(a) excluding employment with "organizations engaged in religious activities" from the Community Service Program, the Plaintiff would be entitled to credit toward his military retirement benefits. . . .[and] Plaintiff would be entitled to receive 50% of his base military pay upon reaching the age of 62.

(Am. Comp. ¶ 28, 29.). These two paragraphs themselves satisfy Article III as they state: (1) that Plaintiff is injured because he did not receive benefits as a result of the classification drawn in the statute; (2) that Defendants are responsible as the creator of the regulation; and (3) that invalidating the statute would permit Plaintiff to receive benefits. Therefore, taking these allegations as true, Plaintiff satisfies Art. III requirements.

### 2. Prudential Standing.

Under the Administrative Procedures Act ("APA") "all parties 'adversely affected or aggrieved' by a final agency action [have] prudential standing to bring suit in federal court. 5 U.S.C. § 702. A person is 'adversely affected or aggrieved' within the meaning of the APA if his or her claim meets the 'zone of interest' test." *Bangura v. Hansen*, 434 F.3d 487, 498-99 (6th Cir. 2006) (citing *NCUA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 487-90 (1998)). Prudential standing merely requires that Plaintiff show that "the interest he or she seeks to protect, 'is *arguably* within the zone of interests to be protected by the statute' under which the plaintiff sues." *Id.* at 499 (quoting *NCUA*, 522 U.S. at 492).

The zone of interest test is a two-part inquiry: "[f]irst, the court must determine what interests the statute *arguably* was intended to protect, and second, the court must determine whether the 'plaintiff's interests affected by the agency action in question are among them.'" *Id.* (quoting

*NCUA*, 522 U.S. at 492). The Sixth Circuit has held that the prudential standing test "is not meant to be especially demanding." *Id*. (quoting *Courtney v. Smith*, 297 F.3d 455, 461 (6th Cir. 2002)).

Defendants do not contest the first prong of the prudential standing test. Defendants, however, argue that Plaintiff fails to satisfy the second prong of the prudential standing test because "[n]o final [agency] action was taken because DMDC never received a proper timely application to participate in the [Program] from Plaintiff." (Mot. to Dismiss at 7.) Specifically, Defendants contend that Plaintiff did not complete "all required reporting within 1 year of the end of the enhanced retirement qualification period as required by DODI 1340.19, ¶ 5.3.3." (*Id*.) As a result of Plaintiff's alleged untimely application, Defendants contend that "[n]o final action was taken because DMDC never received a proper, timely application to participate in the [Program] from Plaintiff." (*Id*.).

Where, as here, a party seeks review of agency action, the APA provides that the party must demonstrate they have been "'adversely affected or aggrieved' by a *final agency action*." *Bangura*, 434 F.3d at 498-99 (emphasis added). For the purpose of the APA, "adversely affected" and "zone of interest" are equivalent, and "an action is final "where it: (1) marks the 'consummation of the agency's decision-making process;' and (2) determines rights and obligations or occasions legal consequences." *Id*. at 500-01 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1996)). However, delay or inaction by the agency may also constitute final action permitting an applicant to seek review. *See Natural Res. Def. Council v. Fox*, 93 F. Supp. 2d 531, 538 (S.D.N.Y. 2000) ("The APA itself includes 'failure to act' in its definition of 'agency action.'") (citing 5 U.S.C. § 551(3)); *see also* 5 U.S.C § 701(b)(2) ("'agency action' [has] the meaning[] given [to it] by section 551 of this title"); *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D. D.C. 1987) ("Agency inaction may represent

-8-

effectively final agency action that the agency has not frankly acknowledged"); *Pub. Citizens Health Research Group v. FDA*, 740 F.2d 21, 32 (D.C. Cir. 1984) ("At some point administrative delay amounts to a refusal to act, with sufficient finality and ripeness to permit judicial review.").

Here, Plaintiff satisfies the second prong of the prudential standing test because he has alleged Defendants' inaction in his Amended Complaint as well as the fact that he was adversely affected or aggrieved by Defendants' inaction.[3] Specifically, Plaintiff states in his Amended Complaint that he filed a Validation Form with DMDC "late in the year 1998." (Am. Comp. ¶ 24.) Plaintiff filed the Validation Form again in November, 2002, and October, 2004. (Am. Comp. ¶ 25, 26.) Moreover, Plaintiff alleges that he sent a letter with the Validation Form in October, 2004, requesting clarification as to whether his application was denied. (Am. Compl. ¶ 26.) Since on a 12(b)(1) motion to dismiss the court must "tak[e] as true all facts alleged by the plaintiff," *Omeiri*, 2007 U.S. Dist. LEXIS 53235, at *3 (citing *Hishon*, 467 U.S. at 73), it finds that Plaintiff has complied with DoDI 1340.19 ¶ 5.3.3 because he submitted the necessary paperwork prior to

---

[3]     Plaintiff also argues that DoDI 1340.19 does not have the force of law and consequently has no bearing on whether his application was timely. (Pl.'s Mot. in Opp. at 4.) Finally, Plaintiff argues it is a reasonable inference that the DMDC received his application "especially in light of the common law 'Mailbox Rule' that the proper mailing of a document raises a rebuttable presumption that it is received by the addressee." (*Id.*)

 First, this court need not rule on Plaintiff's argument that DoDI do not have the force of law  because, in light of the court's Order granting Plaintiff's Motion to Amend Complaint (ECF No. 20), the issue of timeliness is moot.  Second, this court need not address Plaintiff's mailbox rule argument because DoDI 1340.19 ¶ 5.3 only requires that Plaintiff "submit" a completed Validation Form; it does not require that DMDC "receive" the Validation Form.  Accordingly, Defendant's contention that Plaintiff failed to state a claim by failing to aver that DMDC *received* the Validation Form is unavailing because DoDI 1340.19 ¶ 5.3, which Defendants argues is controlling here, does not require Plaintiff to make such a claim.

October 1, 1999, one year after his twenty-year retirement.  Plaintiff therefore fulfills the second prong of the prudential standing testing because he alleges in his Amended Complaint that he was adversely affected or aggrieved by Defendants' inaction.  Accordingly, Defendants' argument based on Plaintiff's lack of prudential standing is not well-taken.

### B.  Statute of Limitations.

In its Motion to Dismiss, Defendants argue that the court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff has exceeded the statute of limitations.  First, Defendants assert that Plaintiff's as-applied Equal Protection claim in regard to 32 C.F.R. § 77.3(a) fails because the claim is time-barred under 28 U.S.C. § 2401(a).  Second, Defendants charge that Plaintiff's facial challenge to 32 C.F.R. § 77.3(a)  fails because Plaintiff failed to bring suit within six years after the publication of the regulation.  For the foregoing reasons, Defendants' arguments are not well-taken.

First, Defendants assert that Plaintiff's as-applied claim is barred by 28 U.S.C. § 2401(a), which states that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  Defendant argues that Plaintiff failed to submit a timely application pursuant to DoDI 1340.19 ¶ 5.3.3, which required Plaintiff to file for military service credit no later than one year after the end of the enhanced retirement qualification period that is synonymous with the twenty year-point.  (Defs.' Mot. to Dismiss at 10) (citing DoDI 1340.19 ¶ 5.3.3).  Defendants argue that because Plaintiff's twenty- year point is October 1, 1998, the statute of limitations on his cause of action accrued on October 1, 1999.  (Def. Mot. To Dismiss at 10).  Defendants therefore assert that the statute of limitations expired on

October 1, 2005, and Plaintiff's suit is time-barred because he filed this cause of action on May 30, 2006. (*Id*. at 11.).

Plaintiff contends that the statute of limitations has not yet expired because DMDC never acknowledged his application or rendered a decision on its merits. (Pl.'s Opp'n at 6-7, ECF No. 14.) Plaintiff alleges that a claim "accrues at the time of the final agency decision, or the exhaustion of all administrative remedies." (*Id*. at 6.) Plaintiff concludes that until there is a final agency decision, his cause of action does not accrue, nor does the six-year statute of limitations begin to run. (*Id*.)

As noted previously, Plaintiff has alleged that he properly filed his application within one year of his twenty-year point pursuant to DoDI 1340.19 ¶ 5.3.3. Additionally, the court has determined that eight years of inaction constitutes a final agency action. Although the court will not specify an exact date on which the agency action was final, the court finds that his cause of action accrued at least after the date he submitted his final application in 2004. Therefore, even assuming that Plaintiff's cause of action accrued the day he filed his last application, the six-year statute of limitations would not expire until 2010. Taking Plaintiff's allegations as true, and construing all reasonable inferences in his favor, the court finds that the statute of limitations on his cause of action has not expired.

Second, citing *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service,* 112 F.3d 1283, 1287 (6th Cir. 1997), Defendant argues that Plaintiff's facial Equal Protection challenge is time-barred because Plaintiff failed to file within six years after 32 C.F.R. § 77.3 appeared in the Federal Register. (Defs.' Mot. To Dismiss at 11.) The Defendants claim that "[s]ince 32 C.F.R.

-11-

§ 77.3 appeared in the Federal Register on August 10, 1994[,]" the statute of limitations ran on August 10, 2000. (*Id*.)

In *Dunn-McCampbell*, the plaintiff brought facial and as-applied challenges against the defendants' oil and gas right regulations promulgated in 36 C.F.R. § 9B. The court stated that "[o]n a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register." *Id*. at 1287 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). However, the court noted that "it is possible . . . to challenge a regulation after the limitations period has expired, provided that the ground for the challenge is that the issuing agency exceeded its *constitutional or statutory authority*." *Id*. (emphasis added). Furthermore, the court posited that "an agency's application of a rule to a party creates a new, six-year cause of action to challenge the agency's constitutional or statutory authority." *Id*. The plaintiff in *Dunn-McCampbell*, however, could not prove that there was any application of the statutes in order to restart the six-year period. *Id*. at 1287-88.

In contrast to *Dunn-McCampbell*, Plaintiff here has alleged that the DMDC applied 32 C.F.R. § 77.3(a) to him by pleading that his application was not considered "because the form shows on its face that Plaintiff's employment was with a[n] [organization engaged in religious activities] and so [it would] not qualify under . . . 32 C.F.R. § 77.3(a)." (Am. Compl. ¶ 27.) Taking Plaintiff's allegations as true and applying the rule set forth in *Dunn-McCampbell*, the court finds that the application of the regulation to Plaintiff restarts the six-year statute of limitations. Consequently, Defendants' argument is not well-taken.

### C. Authorization of 32 C.F.R. § 77.3(a).

As a preliminary matter, the court must address Plaintiff's contention that the regulatory exclusion in 32 C.F.R. § 77.3(a) is not authorized by 10 U.S.C. § 1143a and is contrary to the purpose and intent of Congress in establishing the Program. (Pl.'s Opp'n at 13). Defendants argue that the regulatory exclusion is authorized by 10 U.S.C. § 1143a. For the foregoing reasons, Plaintiff's arguments are not well-taken.

10 U.S.C. § 1143a(g) states as follows:

> (g) Definitions. In this section, the term "public service and community service organization" includes the following organizations:
>
>> (1) Any organization that provides the following services:
>>> (A) Elementary, secondary, or postsecondary school teaching or administration.
>>> (B) Support of such teaching or school administration.
>>> (C) Law enforcement.
>>> (D) Public health care.
>>> (E) Social services.
>>> (F) Any other public or community service.
>> (2) Any nonprofit organization that coordinates the provision of services described in paragraph (1).

Defendants acknowledge that the challenged regulation, 32 C.F.R. § 77.3(a), "allows early retirees to participate in the [Program] when they work for nonprofit organizations engaged in religious activities if the activities are unrelated to religious instructions, worship services, or any form of proselytization." (Defs.' Reply at 7.) Accordingly, and contrary to Plaintiff's assertion otherwise, the regulatory exclusion contained in 32 C.FR § 77.3(a) is therefore consistent with the authorization provision of 10 U.S.C. § 1143a(g).

### D.  Equal Protection.

Defendants contend that Plaintiff fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) because the Program does not violate Plaintiff's Equal

-13-

Protection rights.  Defendants argue that the purpose of the Program is to benefit community and

public service organizations and, as such, religious activities are excluded.  Defendants also argue

that, if the government provided funding for early retirees to participate in religious activities such

as religious instructions, worship services, and proselytization to religious organizations, the

regulation would violate the Establishment Clause.  (Defs.' Mot. to Dismiss at 11-18.)  Defendants

argue that rational basis is the appropriate level of scrutiny.  (Defs.' Reply at 6.)  Plaintiff, however,

responds that 32 C.F.R. § 77.3(a) violates his Equal Protection rights, as applied and facially,[4]

because the Establishment Clause would not be violated if the exclusion were not present, and that

strict scrutiny is the appropriate level of scrutiny.  Plaintiff confines his challenge to the

constitutionality of the regulation and does not argue that his activities as a youth minister qualify

him for military retirement credit under the existing regulation. (Am. Comp.  ¶ 28.)  For the

foregoing reasons, Plaintiff's arguments are not well-taken.

## 1.  Applicable Level of Scrutiny.

The Establishment Clause of the First Amendment of the United States Constitution

provides: "Congress shall make no law respecting an establishment of religion." The Equal

Protection Clause of the Fourteenth Amendment forbids any state from denying "to any person

within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV.  Equal protection

applies to the federal government through the Due Process Clause of the Fifth Amendment. *Bolling*

*v. Sharpe*, 347 U.S. 497, 500 (1954).  It is well-settled that the requirements of Equal Protection are

---

[4]

Beyond alleging that he has performed public and community services (Am. Comp. ¶ 23,
Pl.'s Opp'n at 11-12), Plaintiff has not set forth any facts to call into question the
application of the statute to him.  Therefore, the court finds that there is no difference in
this case between Plaintiff's as-applied and facial Equal Protection claims.

the same whether the challenge is to the federal government under the Fifth Amendment or to state and local actions under the Fourteenth Amendment.  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

The Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005). If the government action does not implicate either a fundamental right or single out suspect classifications, statutes "must bear only a rational relationship to a legitimate state interest."  *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 400 (1985)).  Therefore, strict scrutiny applies in Equal Protection cases when a plaintiff's fundamental right to the free exercise of religion is implicated.  *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004) (applying rational basis scrutiny to the plaintiff's Equal Protection claim because the plaintiff's free exercise rights were not violated and holding that the Washington state program excluding students from pursuing theology degrees with state scholarship funds passes such rational basis review); *Teen Ranch v. Udow,* 389 F. Supp. 2d 827, 841 (W.D. Mich. 2005), *aff'd* 479 F.3d 403 (6th Cir. 2007) (determining that since the plaintiff, who claimed the provision in the state appropriations bill excluding funding to sectarian programs violated her Equal Protection rights, "do not have a meritorious Free Speech or Free Exercise claim, their Equal Protection claim is subject to rational basis scrutiny."); *Wirzburger v. Galvin*, 412 F.3d 271, 283 (1st Cir. 2005) (citing *Locke* and applying rational basis scrutiny to the plaintiff parents' claims that the Massachusetts Const. amend. art. 18, which prohibited public financial support for private schools, violated their Equal Protection rights).  Strict scrutiny also applies in Establishment Clause cases when a state disfavors religion on its face or has been motivated by animosity against religion. *Locke,* 540 U.S. at 725 n.10 (citing *Church of Lukumi Babalus Aye, Inc. v. Hialeah*, 508 U.S. 520, 532 (1993) (applying strict scrutiny and holding that

-15-

the statute prohibiting animal sacrifice was motivated by religious animus toward a particular religious sect).

Here, strict scrutiny is inappropriate because Plaintiff does not allege that 32 C.F.R. § 77.3(a) interfered with his fundamental right to freely exercise his religion or that the statute was motivated by animosity against religion or disfavors religion. First, Plaintiff does not contend that 32 C.F.R. § 77.3(a) interferes with his fundamental right to freely exercise his religion. Plaintiff does not contend that 32 C.F.R. § 77.3(a) imposes criminal or civil sanctions on any type of religious service or right in which Plaintiff participated. *See Locke,* 540 U.S. at 720 (citing *Hialeah,* 508 U.S. at 532). Plaintiff does not maintain that 32 C.F.R. § 77.3(a) denies Plaintiff the right to participate in the political affairs of the community. *Locke*, 540 U.S. at 720. (citing *McDaniel v. Paty,* 43 U.S. 618 (1978)). Plaintiff does not argue that 32 C.F.R. § 77.3(a) requires Plaintiff to choose between his religious beliefs and receiving a religious benefit. *Locke*, 540 U.S. at 720-21 (citing *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987); *Thomas v. Review Bd. Of Indian Employment Sec. Div.,* 450 U.S. 707 (1981); *Sherbert v. Verner,* 374 U.S. 398 (1963)). Plaintiff therefore has not alleged facts that his fundamental right to exercise his religion has been curtailed by 32 C.F.R. § 77.3(a).

Additionally, the regulation does not disfavor religion or display animus toward religion. Like the State of Washington in *Locke* that chose not to allow students to use state scholarship funding to obtain a theology degree, Defendants here have also "merely chosen not to fund a distinct category," *Locke,* 540 U.S. at 720, of Program recipients. As the court in *Locke* concluded, such a statutory exclusion does not disfavor religion. Notably, the regulation here excludes a number of different types of organizations. 32 C.F.R. § 77.3(a) ("These programs shall not be administered

-16-

by businesses organized for profit, labor unions, partisan political organizations, or organizations engaged in religious activities... ).  Yet far from disfavoring or evincing hostility to religion, Defendants acknowledge that the Program credits military personnel for their work at religious organizations, so long as the activities performed by the early retiree "are unrelated to religious instructions, worship services, or any form of proselytization."  (Defs.' Reply at 7) (quoting 32 C.F.R.  §  77.3(a)).   Significantly, the regulation does not make *any* such accomodations for businesses organized for profit, labor unions, or partisan political activities.  Consequently, Plaintiff has failed to allege that  32 C.F.R. § 77.3(a) disfavors or shows animus toward religion. Accordingly, rational basis scrutiny is appropriate here because 32 C.F.R. § 77.3(a) does not interfere with Plaintiff's fundamental right to freely exercise his religion, the statute was not motivated by animosity against religion, and it does not disfavor religion.

To satisfy rational basis scrutiny, the burden of proof is on Plaintiff to show that  32 C.F.R. § 77.3(a) does not bear "a rational relationship to a legitimate state interest."  *Jackson v. Jamrog,* 411 F.3d 625, 618 (6th Cir. 2005) (citing *Cleburne Living Ctr.,* 473 U.S. at 500).  Significantly, the "rational basis test is enormously deferential to the government, and only rarely have laws been declared unconstitutional for failing to meet this level of review."  ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 9.1 (2002) (citations omitted).  Under rational basis scrutiny, "statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify its discrimination."  *McGowan v. Maryland,* 366 U.S. 420, 426 (1961).

### 2. Applying Rational Basis Scrutiny.

Defendants claim two purposes for the classification in 32 CFR § 77.3(a) excluding an early retiree from working at a religious organization and performing religious instructions, worship

services, and proselytization, and Defendants argue both purposes withstand rational basis scrutiny. First, Defendants argue that the Program's classification excluding religious activities is rationally related to its purpose of providing benefits only to community and public service organizations. Second, Defendants argue that the Program's classification excluding religious activities is also rationally related to Defendants' purpose of avoiding an Establishment Clause violation. For the foregoing reasons, the court concludes that the Program withstands rational basis scrutiny.

*a. Providing Benefits to Community and Public Service Organizations.*

Defendants note that "the purpose of the [Program] is to utilize the experience and skills of those individuals in the 15 to 20-year category 'to fill critical needs in our communities' such as 'in education, law enforcement, and health care that are underserved.'" (Defs.' Reply at 8) (citing Senate Committee on Armed Services, 102 S. REP. NO. 92-352). The plain meaning of 32 C.F.R. § 77.1 (b) also confirms Defendants' assertion that the primary purpose of the Program is to benefit public and community organizations, not, as Plaintiff asserts, military retirees. (The "purpose" of the Program is to "[e]ncourage and assist Service members requesting retirement with fewer than 20 years of service *to register for public and community service employment*.") (*Id.*) (emphasis added).

Since funding religious activities is not a purpose of the Program, Defendants argue, the classification excluding such activities is a rational means to serve the legitimate interest of filling critical needs in public and community service organizations. (*Id.* at 8-9). Moreover, the Equal Protection Clause does not require Defendants to fund religious organizations in the same way that it funds secular organizations in any given program. *Teen Ranch,* 389 F. Supp. at 838 (*Locke v. "Davey* confirms that the Free Exercise Clause's protection of religious beliefs and practices from

-18-

direct government encroachment does not translate into an affirmative requirement that public entities fund religious activity simply because they choose to fund the secular equivalents of such activity.") (quoting *Eulitt v. Maine, Dept. of Educ.,* 386 F.3d 344, 354 (1st Cir. 2004)). Defendants' argument is well-taken. Since Plaintiff has not shown that Defendant fails to set forth any set of facts that could reasonably justify the religious exclusion in 32 CFR § 77.3(a) based on the Program's purpose of only benefitting community and public service organizations, the statute withstands rational basis scrutiny.

### b. Avoiding Establishment Clause Violation.

Second, Defendants argue that the purpose of the classification in 32 C.F.R. § 77.3 excluding religious organizations that are engaged in religious activities is Defendants' desire to avoid a violation of the Establishment Clause. The Supreme Court adopted a three-pronged test in *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971), to determine whether a government statute or practice complies with the Establishment Clause. First, the statute must have a secular legislative purpose. *Id.* Second, the statute's principal or primary effect must neither advance nor inhibit religion. *Id.* Third, the statute must not foster an excessive entanglement with religion. *Id.* The "entanglement" prong has been folded into the "effect" prong. *See Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002) ("The Establishment Clause ... prevents a State from enacting laws that have the 'purpose' or 'effect' of advancing or inhibiting religion.").

Here, Defendants do not dispute that the Program complies with the first prong of the *Lemon* test. As discussed above, Defendants acknowledge that the Program has the secular purpose of encouraging military service personnel to fill critical needs in community and public service

-19-

organizations by offering retirement credit to military personnel. (Defs.' Reply at 8, ECF No. 17). Such a purpose is clearly secular under the first prong of the *Lemon* test.

Defendants argue, however, that were this federal program to provide increased retirement pay benefits for Plaintiff to work at a religious organization and perform religious services such as religious instructions, worship services, or proselytization, the statute would fail the second prong of the revised *Lemon* test. (Mot. to Dismiss at 18.) Defendants argue that doing so would have the principal or primary effect of advancing religion because it would be funding "specifically religious activities" at a "pervasively sectarian" organization in violation of Establishment Clause precedent. *See Steele v. Inus. Dev. Bd.,* 301 F.3d 401, 407- 09 (6ᵗʰ Cir. 2002) (stating that the *Roemer v. Bd. of Publ. Works of Maryland,* 426 U.S. 736, 755 (1976) rule that "no state aid at all shall go to institutions that are so 'pervasively secular' that secular activities cannot be separated from sectarian ones" is controlling until the Supreme Court specifically overrules it). Defendants also argue that the Program would "result in an excessive government entanglement with religion as the government would have to monitor Plaintiff's sectarian work at the church to determine whether it constituted public or community service." (Defs.' Mot. to Dismiss at 18).

Defendants argue that the classification in 32 C.F.R. § 77.3(a) limiting the Program to religious organizations that are not engaged in religious activities such as religious instructions, worship services, and proselytization allows the government to avoid violating the "effect" prong of the revised *Lemon* test, and that this exclusion is permissible under federal law. Defendants note that the restriction against funding activities related to religious instructions, worship services, or any form of proselytization in 32 C.F.R. § 77.3(a) is consistent with "charitable choice" provisions that have been applied to a range of government grant programs in recent years to prohibit

government funds from being used for sectarian purposes.  (Defs.' Mot. to Dismiss at 15-17) (citing 42 U.S.C. § 300x-65(i); 29 U.S.C.  § 2938(a)(3); 42 U.S.C. § 9920(c)).  Moreover, Defendants correctly points out that the Supreme Court upheld the general grant program in *Roemer,* 426 U.S. at 740-41, which prohibited grantee private colleges from using such money for "sectarian purposes," and the school aid program in *Mitchell,* 530 U.S. at 831, which prohibited any aid for any activity that was not "secular, neutral, and nonideological."  (Mot. to Dismiss at 17).

The Supreme Court in *Locke,* 540 U.S. at 720 n.3*,* applied rational basis scrutiny to a state statute excluding state funding of sectarian schools and held the exclusion did not violate students' Equal Protection rights.  Applying federal precedent in the wake of *Locke*, the Supreme Court of Maine interpreted federal Establishment Clause precedent and applied rational basis scrutiny to hold that Me. Rev. Stat. Ann. Tit. 20-A, § 2951(2), which excluded sectarian schools from payment of public funds for tuition at certain private schools, did not violate parents' Equal Protection rights. The court's rationale was based on the fact that  the state's desire to avoid excessive entanglements between government and religion provided a rational basis to maintain the funding limitation. *Anderson,* 2006 Me. LEXIS 39 at * 56.  The Sixth Circuit has held that the "desire to avoid violating the Establishment Clause ... is sufficient to meet the rational basis test." *Teen Ranch,* 479 F.3d at 410 (quoting the district court's holding, 389 F. Supp. at 841).  Defendants here have asserted that the same desire to avoid an Establishment Clause violation was a purpose of the classification excluding religion in 32 C.F.R. § 77.3 (a).  Accordingly, Defendants have alleged facts that could reasonably justify the classification in 32 C.F.R. § 77.3(a) excluding religious organizations from the Program.

Plaintiff analogizes the Program here to the indirect funding program at issue in *Zelman,* 536 U.S. 639, which held that students may use government aid at a sectarian school for the secular purpose of education without violating the Establishment Clause.  Plaintiff argues that the Program, like the one in *Zelman,* is a "private choice program" that benefits military retirees, who can direct the aid to organizations of their choice.  (Pl.'s Opp'n. at 9-10).  However, Plaintiff's reliance on *Zelman* is inapposite because the intended beneficiaries of the *Zelman* private choice program were students, while the intended beneficiaries of the Program here are public and community service organizations, not retirees.  Also, the funding in *Zelman* was intended to further the secular purpose of educating schoolchildren.  Here, were the regulation not drafted the way it is, funding would go directly to early military retirees who perform religious instructions, worship services, or proselytization.  Indeed, 32 C.F.R. § 77.3(a) is carefully crafted to allow an early retiree to earn military credit for his work at a religious organization, so long as the services provided by the early retiree are unrelated to religious instructions, worship services, or proselytization.  Significantly, the Sixth Circuit recently upheld a state's right to exclude nonprofit organizations that "integrate religion as an integral part"of the social services the organization provides from receiving state funding, *Teen Ranch*, 479 F.3d at 410, due to the state's "desire to avoid violating the Establishment Clause."  *Id.*

Accordingly, 32 C.F.R. § 77.3(a) withstands rational basis scrutiny because Plaintiff has not shown that Defendants failed to set forth any set of facts that could reasonably justify the classification excluding religious organizations.  Having determined that 32 C.F.R. § 77.3(a) does not violate the Equal Protection Clause, Plaintiff therefore has failed to state a claim upon which the court can grant relief.  Plaintiff has confined his cause of action to challenging the

constitutionality of 32 C.F.R. § 77.3(a).  Plaintiff has not, however, alleged that he is entitled to relief under 32 C.F.R. § 77.3(a), *e.g.*, by claiming that, though he worked for a religious organization, the services he provided as a lay intern and youth minister were unrelated to religious instructions, worship services, or any form of proselytization.  Rather, Plaintiff indicates in his Amended Complaint that such services were related to religious instructions or worship services, stating that "any application by the Plaintiff for creditable service based upon his employment by the [Church] between from [sic] January 1, 1996 and February 28, 2001, would be denied ... ."(Am. Compl. ¶ 28-29).  Accordingly, his challenge to the constitutionality of the regulation on the basis that it violates his rights under the Equal Protection Clause because he is not allowed to receive military service credit for providing community and public services when they are related to religious instructions, worship services, or forms of proselytization is denied.  Therefore, the court hereby grants Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated above, the court denies Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. 12(b)(1).  (ECF No. 12.)  The court grants Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. 12(b)(6).  (ECF No. 12.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

August 29, 2007